AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

for the

Southern District of Ohio

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br><br>A WHITE APPLE iPHONE WITH A BLACK CASE, FURTHER<br>DESCRIBED IN ATTACHMENT A | )<br>)<br>)<br>)<br>)<br>) | Case No. **1:23-MJ-00591** |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

SEE ATTACHMENT A

located in the _____ Southern _____ District of _____ Ohio _____ , there is now concealed *(identify the person or describe the property to be seized)*:

SEE ATTACHMENT B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. 841 and 846 | Possession with Intent to Distribute Controlled Substance and Conspiracy to Commit the Same |

The application is based on these facts:

SEE ATTACHED AFFIDAVIT

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Eric S Persing*

*Applicant's signature*

Eric Persing, Task Force Officer, DEA

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____ FaceTime video conference _____ *(specify reliable electronic means)*.

Date: **Jul 21, 2023**

*Stephanie K. Bowman*

*Judge's signature*

City and state: Cincinnati, Ohio

Hon. Stephanie K. Bowman, U.S. Magistrate Judge

*Printed name and title*

## ATTACHMENT A
### (Property to Be Searched)

The property to be search is a white Apple iPhone with a black case (the **TARGET DEVICE**). The **TARGET DEVICE** is currently in law enforcement custody located at the DEA Evidence Room, 36 E. 7th St., Suite 1900, Cincinnati, Ohio 45202, which is located in the Southern District of Ohio. The TARGET DEVICE is pictured below:



The authorization to search includes any SIM cards or other storage devices in, on, or associated with the **TARGET DEVICE**.

**ATTACHMENT B**
**(Property to be Seized)**

1.      All records, data or material on the **TARGET DEVICES** described in Attachment A that relate to violations of 21 U.S.C. §§ 841(a)(1) (possession with the intent to distribute and distribution of controlled substances) including:

      a.  Evidence of the distribution of illegal narcotics;

      b.  Lists of customers and related identifying information;

      c.  Types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

      d.  Any information related to sources of drugs (including names, addresses, telephone numbers, or any other identifying information);

      e.  Any information recording schedules or travel;

      f.  Any and all stored telephone numbers;

      g.  Any and all text messages, to include incoming, outgoing, saved, deleted, and drafts;

      h.  Any and all emails, sent, received, delete, draft and/or saved;

      i.  Any and all voicemails;

      j.  Any and all photographs, electronic images, video recordings, and/or images saved and/or deleted on the cellular device;

      k.  Any and all data retrieved from Apps on the device;

      l.  Any and all entries made in a calendar and/or notebook feature;

      m.  Any and all personal numbers associated with the cellular device to include the telephone number, push-to-talk number, make, model, carrier, ESN, IMEI, ICCID, MEID, SEID, and or IMSI.

2.      Evidence of user attribution showing who used or owned the **TARGET DEVICES** at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION – CINCINNATI

IN THE MATTER OF THE SEARCH OF A
WHITE APPLE IPHONE WITH BLACK
CASE CURRENTLY LOCATED AT THE
DEA EVIDENCE ROOM, 36 E. 7TH
STREET, SUITE 1900, CINCINNATI, OHIO

Case No. __**1:23-MJ-00591**__

**Filed Under Seal**

## AFFIDAVIT

I, Eric S Persing, Task Force Officer (TFO) with the Drug Enforcement Administration (DEA), being first duly sworn, hereby depose and state as follows

### INTRODUCTION

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the search, extraction, and examination of the following electronic device: a white Apple iPhone with a black case, seized from MIKELLE D. HILL upon her arrest, and currently located at the DEA Evidence Room, 36 E. 7th St., Suite 1900, Cincinnati, Ohio 45202 (the **TARGET DEVICE**), which is described in greater detail in Attachment A.  As discussed below, the **TARGET DEVICE** was utilized by MIKELLE HILL in furtherance of a large-scale drug trafficking operation (the WHEELER DTO). The **TARGET DEVICE** was recovered during the lawful execution of an arrest warrant, issued February 23, 2023. The requested search warrant would allow for the examination of the **TARGET DEVICE**, the extraction of information from the **TARGET DEVICE**, and the subsequent search of the **TARGET DEVICE** for evidence of narcotics trafficking, as further described in Attachment B.

2.      I am a Parole Officer with the Ohio Department of Rehabilitation and Corrections Adult Parole Authority, Hamilton County, Ohio, and have been so employed with Ohio Department of Rehabilitation and Corrections for the last 7 years where I have been assigned as a

Field Training Officer, in-service instructor, and Fugitive Apprehension Team leader.  I was assigned to the United States Marshal Service (USMS) Fugitive Task Force in 2021 and am currently assigned as a TFO with the DEA Cincinnati District Office ("DEA Cincinnati") and have been so assigned since January of 2022.

3.      As a TFO with the DEA, my duties include the investigation of violations of federal law concerning the importation, manufacture, possession and distribution of controlled substances as defined by Title 21, United States Code, including controlled substances such as heroin, cocaine, methamphetamine, marijuana, illicitly diverted pharmaceuticals, and other dangerous drugs. During the current assignment with the DEA, I have participated in numerous investigations involving drug trafficking and money laundering.  I earned a Bachelor of Science Degree from the University of Cincinnati and have had frequent discussions with other experienced law enforcement officers, as well as admitted narcotics traffickers, confidential sources, witnesses, and cooperating defendants concerning the methods and practices of drug traffickers.  I have also participated in all aspects of drug investigations, including physical surveillance, undercover operations, execution of search warrants, seizure of assets, and arrests of drug traffickers.  I am the case officer on this case, and so being, is fully aware of the facts of the case.

4.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is submitted for the limited purpose of demonstrating probable cause for the issuance of a criminal complaint and arrest warrant, and thus do not contain each and every fact that I know about the investigation.

5.      Based on my training and experience, as well as the facts as set forth in this affidavit, there is probable cause to believe that violations of 21 U.S.C. §§ 841 and 846 (possession with the intent to distribute controlled substances and conspiracy to commit the same) have been

2

committed STEPHEN WHEELER, ROMELLO WHEELER, Antoine PAUYO, Mikelle D. HILL, and other known and unknown co-conspirators (collectively, the "WHEELER DTO"). There is also probable cause to search the information described in Attachment A for evidence, contraband, fruits and/or instrumentalities of these crimes, as further described in Attachment B.

## PROBABLE CAUSE

6.      Since July 2022, the DEA has been investigating the large-scale WHEELER DTO—a major source of illegal narcotics in Cincinnati, Ohio, including cocaine, heroin, fentanyl, methamphetamine, and marijuana. Agents have identified STEPHEN WHEELER as the head of the WHEELER DTO; his son, ROMELLO WHEELER, as the primary distributor; Antoine PAUYO as the suspected source of supply based out of Atlanta, Georgia; and Mikelle D. HILL as a suspected courier/co-conspirator.

7.      As discussed below, the WHEELER DTO utilizes multiple vehicles, registered under different names, to transport their contraband, which they store at various apartment buildings that are also leased under different names. Through the course of the investigation, agents have identified that the WHEELER DTO primarily utilizes the following locations and vehicles:

  a.  Industry Apartments, 1118 Sycamore Street, Unit #626, Cincinnati, Ohio 45202 (the "**Wheeler Apartment**") is the primary residence of both STEPHEN and ROMELLO WHEELER, where agents recovered 212 lbs., marijuana, USC, firearm and jewelry.

  b.  2515 Burnet Avenue, Unit #1011, Cincinnati, Ohio 45219 (the "**Wheeler Stash House**") where agents recovered drug paraphernalia, scales, vacuum sealer and cutting agents.

  c.  Public Storage Unit, 2900 Disney Street, Unit #2261, Cincinnati, Ohio 45209 (the "**Wheeler DTO Storage Unit**") which is leased to Mikelle D. HILL and where agents recovered suspected fentanyl and methamphetamine.

3

d. 2007 Gray Ford F-150 bearing Ohio license plate JDF1635 (the "**Ford F-150**"), which is registered to Mikelle D. HILL but primarily operated by ROMELLO WHEELER.

e. 2020 Gray GMC Sierra 1500 Denali bearing Ohio license plate JMX3418 (the "**Denali**"), which is registered to STEPHEN WHEELER and his mother Barbara Simms, but is STEPHEN WHEELER's primary vehicle.

f. 2018 black Kia Stinger bearing Ohio license plate JSM8684 (the "**Kia Stinger**"), which is registered to Barbara Simms but is STEPHEN WHEELER's secondary vehicle, where agents recovered approximately one kilogram of cocaine and $108,000.00 USC.

g. 2020 white Mitsubishi, Ohio License Plate JSH4585 Make: MITSUBUISHI SUV, registered to Mikelle HILL at 156 Nansen Street Cincinnati Ohio 45216. This vehicle was suspected to use by HILL to transport the blue suitcase to Public Storage Unit that contained fentanyl and methamphetamine.

8.     From July 2022 until their arrest in February 2023, agents observed a repeated pattern of STEPHEN WHEELER and ROMELLO WHEELER, working in concert, making frequent stops at both the Wheeler Apartment and Wheeler Stash House before and after conducting suspected drug transactions and other activities consistent with drug trafficking. The investigation revealed that both STEPHEN WHEELER and ROMELLO WHEELER possessed key fab entry passes to the Wheeler Apartment and Wheeler Stash House. These entries were observed during physical surveillance, and management confirmed that both subjects made entry into these locations from a secured garage, utilizing their key fabs. After speaking to management from both locations, it was determined key fabs were issued to the leases. This was consistent to the entries to the secured garages being utilized by WHEELER and ROMELLO

9.     As the investigation progressed, agents identified several females associated with WHEELER and ROMELLO DTO. These females registered vehicles or apartments in their names for the DTO to use. Based on my training and experience, this is a common technique that narcotics traffickers use to evade detection from law enforcement. During the investigation, none of these females were observed on surveillance until February 2, 2023, when Mikelle D. HILL

4

was identified as assisting ROMELLO by transporting a blue suitcase containing 1,900 grams of methamphetamine and 1,340 grams of fentanyl from the Wheeler Stash House to the Wheeler DTO Storage Unit.

10. On January 31, 2023, agents were at the Wheeler Apartment attempting to install a GPS tracker on Stephen Wheeler's BMW. Agents observed an illegally parked white Mitsubishi later identified as bearing Ohio License Plate JSH4585. According to the Ohio BMV, the white Mitsubishi is registered to Mikelle D. HILL, ROMELLO WHEELER's suspected girlfriend who is also the registered owner of the Ford F-150 and the Wheeler DTO Storage Unit. Agents were unable to identify any occupants inside the Mitsubishi but suspected that ROMELLO WHEELER was operating the vehicle because (1) one of the vehicles often utilized by ROMELLO, the Ford F-150, was also registered in Mikelle D. Hill's name; and (2) the Mitsubishi was parked in the secured garage facility, which required management-issued key fobs to access, such as the ones belonging to STEPHEN WHEELER and ROMELLO WHEELER. Moreover, while the Mitsubishi appeared to be unattended, it was parked next to the elevator that STEPHEN WHEELER and ROMELLO WHEELER would use to travel to their apartment located on the 6th floor.

11. On February 2, 2023, agents observed suspicious activity from STEPHEN WHEELER and GPS data of the WHELLER DTO's vehicles. Agents observed a subject dressed in an orange track suit driving Stephen Wheeler's BMW to the ALOFT Hotel located at 201 3rd Street, Newport, Kentucky 41071 ("ALOFT Hotel"). A subpoena was issued and agents identified the driver as Antoine PAUYO. PAUYO resides in the Atlanta, Georgia area but stays at the ALOFT Hotel on average twice a month. From the outset of this investigation, agents have

5

suspected that WHEELER's primary source of supply is from the Atlanta, Georgia area. And, as discussed below, agents now believe that PAUYO is that source of supply

12.     Later on, February 2, 2023, STEPHEN WHEELER departed from the Wheeler Apartment and drove the GMC Denali directly to the Wheeler Stash House. Shortly after, the Mitsubishi also arrived at the Wheeler Stash House, escorting PAUYO, who was driving Stephen Wheeler's BMW. At this time, both vehicles pulled to the gravel lot next to the Wheeler Stash House and turned around to make entry into the secured garage. Both vehicles waited several seconds before making entry into the garage via what appeared to be a key fab.

13.      After approximately an hour and 15 minutes, the white Mitsubishi exited the garage operated by MIKELLE HILL. Agents then followed the Mitsubishi to the Public Storage Unit facility in Oakley, later identified as Public Storage located at 2900 Disney Street, Cincinnati, Ohio 45209 ("Public Storage").

14.     The next day, a subpoena was issued to Public Storage. According to their records, Mikelle D. HILL has rented unit #2261 (*i.e.*, the Wheeler DTO Storage Unit) since November 2022. Public Storage's records also reflected that Mikelle D. HILL's access code was used to enter the storage unit facility the day prior, which is consistent with what agents witnessed.

15.     On February 3, 2023, GPS tracking on the Wheeler BMW revealed that was traveling southbound on interstate 75. At that time, it was believed that STEPHEN WHEELER, ROMELLO WHEELER, and/or PAUYO were operating the Wheeler BMW in route to Atlanta and were possibly transporting drug proceeds.

16.     After the Wheeler BMW crossed into Georgia, an interdiction team comprised of Bartow County Sheriff deputies observed the Wheeler BMW and initiated a traffic stop. ROMELLO WHEELER was driving, PAUYO was in the front passenger seat, and a female was

6

in the rear seat.  During the traffic stop, a K9 unit alerted positively to the presence of narcotics inside the Wheeler BMW.  The interdiction team thus initiated a lawful search of the Wheeler BMW and found two bags of marijuana (nineteen grams in total) and a large bag of U.S. currency under the front seat that totaled $5,000.  PAUYO claimed that he was a music promoter and that the money belonged to him.  All three subjects stated that this was the only currency in the Wheeler BMW.  However, a more detailed search of the Wheeler BMW revealed suitcases in the trunk. Inside one of the suitcases, law enforcement found another large bag of U.S. currency, rubber banded in large stacks of varying denominations. In total, agents found $67,960.00 in U.S. currency inside the Wheeler BMW.

17.     On February 7, 2023, agents, with the consent of Public Storage's Management, conducted an open air sniff test of the Wheeler DTO Storage Unit, where narcotics detection K9, "Duce," alerted positively to the presence or odor of narcotics. Agents obtained and executed a search warrant for the Wheeler DTO Storage Unit and found 1,900 grams of methamphetamine and 1,340 grams of fentanyl located inside in a blue suitcase.

18.     Later that same day, agents executed a number of federal search warrants at residences and vehicles utilized by the WHEELER DTO.  At the Wheeler Apartment, agents found 212.6 pounds of marijuana, a loaded FN Herstal Belgium pistol, $129,530.00 in bulk U.S. currency, assorted jewelry, personal papers, cell phones, men's clothing, and other documentation reflecting that both STEPEHN WHEELER and ROMELLO WHELLER were the occupants of the Wheeler Apartment.  At the Wheeler Stash House, agents discovered what appeared to be a drug processing location that contained cutting agents, multiple scales, a vacuum sealer, packaging material, and gloves.  Agents also seized 962.5 grams of cocaine and $108,000 in bulk U.S. currency from STEPHEN WHEELER's Kia Stinger.

7

19.     Thereafter, Cincinnati Police Criminalistics Analyst, Kimberly Horning, identified several fingerprints retrieved from the blue suitcase recovered from the Wheeler DTO Storage Unit. Mikelle D. HILL's fingerprints were located on the exterior of the blue suitcase. ROMELLO WHEELER's fingerprints were located on the plastic that was wrapped around the narcotics, inside the suitcase.

20.     On February 14, 2023, agents went to 156 Nansen Street, Cincinnati, Ohio to interview Mikelle D. Hill. Upon arrival, agents observed the white Mitsubishi parked in the driveway. Agents approached the residence and asked HILL for permission to enter and discuss the investigation.  HILL granted the agents access and consented to answering questions.  During the interview, it appeared to agents that HILL was being evasive in her answers and could not recall many events that had just occurred over the last two weeks. Nevertheless, HILL admitted that ROMELLO WHEELER purchased the Ford F-150 and she agreed put it in her name. HILL further admitted that she owned the blue suitcase, the Wheeler DTO Storage Unit, and the white Mitsubishi, but stated that she was unaware of any drugs being inside.

21.     On February 16, 2023, agents met with a Technology Specialist from Florida who managed the camera system for the Wheeler Stash House apartment building. During this review of video surveillance, agents discovered the following: On February 2, 2023, STEPHEN WHEELER entered the parking garage of the Wheeler Stash House, driving the Denali. STEPHEN WHEELER parked the Denali inside the garage, entered the apartment building's office, spoke to management, and then departed the building in an unknown white sedan.  Shortly after, ROMELLO WHEELER gained access to the parking garaging, driving a silver Toyota Camry. After he parked—and while the BMW and Mitsubishi were located outside the garage awaiting to gain entry—ROMELLO WHEELER walked over to his Ford F-150, which is

8

registered to MIKELLE HILL, and retrieved a blue suitcase from the passenger compartment. ROMELLO WHEELER then walked to the key fab sensor located inside the parking garage, activated it, and proceeded to let the BMW and Mitsubishi enter the garage. ROMELLO then walked to meet with the BMW and Mitsubishi that were parking. PAUYO exited the BMW and HILL exited the Mitsubishi.

22. Video surveillance of the 6th floor then shows ROMELLO WHEELER getting off the elevator, by himself, wheeling the blue suitcase, and entering the Wheeler Stash House. HILL and PAUYO come up the elevator and enter the Wheeler Stash House shortly later. An hour later, ROMELLO opens the front apartment door of the Wheeler Stash House and surveils both sides of the hallway. HILL then exits the apartment with the blue suitcase. As HILL is departing with the blue suitcase, ROMELLO WHEELER kisses her and then closes the apartment door. Video surveillance from the parking garage then shows HILL placing the blue suitcase in the rear compartment of the Mitsubishi before driving away. It was at this point that investigators observed the Mitsubishi as it drove directly to the Wheeler DTO Storage Unit.

23. In other words, on February 2, 2023, STEPHEN WHEELER arrived at the parking garage of the Wheeler Stash House and retrieved the blue suitcase from the back of his Ford F-150 (which he operated but was registered to HILL). STEPHEN WHEELER then opened the parking garage door for PAUYO and HILL, before taking the blue suitcase up to the Wheeler Stash House. PAUYO and HILL proceeded upstairs and met STEPHEN WHEELER inside the Wheeler Stash House. An hour later, HILL departed from the Wheeler Stash House, with the blue suitcase, and drove the white Mitsubishi to the Wheeler DTO Storage Unit. Five days later, agents executed a search warrant at the Wheeler DTO Storage Unit and found 1,900 grams of methamphetamine and 1,340 grams of fentanyl located inside that same blue suitcase. HILL's

fingerprints were located on the exterior of that blue suitcase. And HILL admitted that the blue suitcase, Wheeler DTO Storage Unit, and white Mitsubishi were all hers.

24.     On February 23, 2023, a federal grand jury returned an indictment, charging HILL (along with STEPHEN and ROMELLO WHEELER) with one count of narcotics conspiracy in violation of 21 U.S.C. § 846, and one count of possession with intent to distribute fentanyl and methamphetamine in violation of 21 U.S.C. 841. That same day, a federal arrest warrant was issued for HILL.

25.     On or around February 28, 2023, agents arrested HILL pursuant to that warrant and seized the **TARGET DEVICE**, which was located on HILL's person. Based on my training and experience, I know that drug traffickers and their co-conspirators rely heavily on the use of their cellular telephones for daily activities, including conducting drug trafficking activities such as distributing drugs and/or storing records about drug proceeds (*e.g.*, ledgers, communications about drug proceeds, media records such as images and videos, financial transactions, etc.). I also know, based on my training and experience, that it is common for drug traffickers to have several different phones that they utilize. Based on my training, experience, and the facts of this investigation, I therefore believe that HILL utilized the **TARGET DEVICE** in furtherance of drug trafficking, and that evidence of such will be located therein.

26.     The **TARGET DEVICE** is currently located at the DEA Evidence Room, 36 E. 7th Street, Suite 1900, Cincinnati, Ohio 45202. Based on my training and experience, I believe that the **TARGET DEVICE** has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the **TARGET DEVICE** first came into the possession of the DEA.

10

27.     Upon seizing the **TARGET DEVICE**, law enforcement examined it for identifying information (such as a serial number). Based on my knowledge and experience, newer Apple devices do not include identifying information such as a serial number on the physical exterior of the phone, but rather can only be accessed within the settings of the device. The **TARGET DEVICE** was locked and required a PIN code in order to access identifying information such as a model number, phone number, serial number, etc. Accordingly, the **TARGET DEVICE** is described in Attachment A based on its physical features due to information available/accessible to law enforcement.

## TECHNICAL TERMS

28.     Based on my training and experience, I use the following technical terms to convey the following meanings:

(a) Wireless telephone: A wireless (or mobile or cellular or cell) telephone (or phone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the telephone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and telephone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

(b) Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for

11

viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

(c) Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

(d) GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records of the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

(e) External Storage Device: An external storage device is a data storage device designed primarily to store and retrieve digital information and data including audio, video, or photographic files. External storage devices are often portable, and can include various features. Depending on the model, an external storage device may have the ability to store very large amounts of electronic data.

(f) IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

(g) Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the

12

Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

20.     Based on my training, experience, and research, I know that electronic devices, like the **TARGET DEVICE**, have capabilities that allow them to serve as a wireless telephone, digital camera, portable media player, and a GPS navigation device.  In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

### ELECTRONIC STORAGE AND FORENSIC ANALYSIS

21.     Based on my knowledge, training, and experience, I know that electronic devices, like the **TARGET DEVICE**, can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

22.     There is probable cause to believe that things that were once stored on the **TARGET DEVICE** may still be stored there, for at least the following reasons:

(a) Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered 12 months or years later using forensic tools. This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

(b) Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

(c) Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used

13

it. To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

(d) Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

23. *Forensic evidence*. As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the **TARGET DEVICE** was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the **TARGET DEVICE** because:

(a) Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

(b) Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

(c) A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

(d) The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

14

(e) Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

24.     *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the **TARGET DEVICE** consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

25.     *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night

## CONCLUSION

26.     Based on the foregoing, there is probable cause to believe that violations of 21 U.S.C. §§ 841 and 846 (possession with the intent to distribute controlled substances and conspiracy to commit the same) have been committed by Mikelle D. HILL and other known and unknown co-conspirators of the WHEELER DTO. There is also probable cause to believe that the **TARGET DEVICE** (as described in Attachment A), contains evidence, contraband, fruits and/or instrumentalities of that crime, as described in Attachment B. As such, I respectfully request that the Court issue the proposed search warrant pursuant to Federal Rule of Criminal Procedure 41.

27.     I further request that the Court authorize execution of the warrant at any time of day or night, because the **TARGET DEVICE** is currently in law enforcement custody.

## REQUEST FOR SEALING

28. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

Respectfully submitted,

*Eric S Persing*

Eric Persing
Task Force Officer
Drug Enforcement Agency

Subscribed and sworn to me by reliable electronic means, specifically, FaceTime video conference on July __21__ 2023.

*Stephanie K. Bowman*

Honorable Stephanie K. Bowman
United States Magistrate Judge

16

**ATTACHMENT A**
**(Property to Be Searched)**

The property to be search is a white Apple iPhone with a black case (the **TARGET DEVICE**). The **TARGET DEVICE** is currently in law enforcement custody located at the DEA Evidence Room, 36 E. 7th St., Suite 1900, Cincinnati, Ohio 45202, which is located in the Southern District of Ohio.  The TARGET DEVICE is pictured below:



The authorization to search includes any SIM cards or other storage devices in, on, or associated with the **TARGET DEVICE**.

**ATTACHMENT B**
**(Property to be Seized)**

1.      All records, data or material on the **TARGET DEVICES** described in Attachment A that relate to violations of 21 U.S.C. §§ 841(a)(1) (possession with the intent to distribute and distribution of controlled substances) including:

   a.  Evidence of the distribution of illegal narcotics;

   b.  Lists of customers and related identifying information;

   c.  Types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

   d.  Any information related to sources of drugs (including names, addresses, telephone numbers, or any other identifying information);

   e.  Any information recording schedules or travel;

   f.  Any and all stored telephone numbers;

   g.  Any and all text messages, to include incoming, outgoing, saved, deleted, and drafts;

   h.  Any and all emails, sent, received, delete, draft and/or saved;

   i.  Any and all voicemails;

   j.  Any and all photographs, electronic images, video recordings, and/or images saved and/or deleted on the cellular device;

   k.  Any and all data retrieved from Apps on the device;

   l.  Any and all entries made in a calendar and/or notebook feature;

   m.  Any and all personal numbers associated with the cellular device to include the telephone number, push-to-talk number, make, model, carrier, ESN, IMEI, ICCID, MEID, SEID, and or IMSI.

2.      Evidence of user attribution showing who used or owned the **TARGET DEVICES** at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.